86 So.2d 147 (1955)
J.W. FOXWORTH, Petitioner,
v.
FLORIDA INDUSTRIAL COMMISSION, and the Fidelity & Casualty Co. of New York, Respondents.
Supreme Court of Florida. En Banc.
May 27, 1955.
Rehearing Denied October 12, 1955.
Rehearing Denied January 6, 1956.
*148 C.J. Hardee, Jr., Tampa, for petitioner.
R. Corbin Glos and Shackleford, Farrior, Shannon & Stallings, Tampa, Burnis T. Coleman and Rodney Durrance, Tallahassee, for respondents.
Motion for Leave to File Extraordinary Petition for Rehearing Denied January 6, 1956.
DREW, Chief Justice.
The petitioner, J.W. Foxworth, brings this proceeding for a writ of certiorari to review an order of the Florida Industrial Commission which affirmed an order of the Deputy Commissioner denying compensation to Foxworth. He challenges the sufficiency of the evidence under the law to support the findings of fact and denial of his claim for compensation.
Claimant was employed as an inspector in the Tampa area by the Florida Industrial Commission. For more than ten years prior to the subject injury he suffered from arthritis. He was wholly incapacitated by that disease from 1943 to 1947. This action is to recover for an injury due to a fracture of the hip alleged to have been suffered by him on November 18, 1952 as the result of a fall in the lobby of the Casa Blanca Hotel while he was in Miami Beach attending a convention of the Industrial Commission. At the hearing before the Commissioner claimant testified that on the morning of Monday, November 18, 1952, well before the time of the 10:00 a.m. meeting, he was sitting on the arm of an upholstered chair in the hotel lobby talking to other persons, including his superior. He then obtained permission, from his superior, to go to Lincoln Road to get something for his grandchildren and started to leave. In his own words, "I got off of the arm of the chair, made a couple of steps from there *149 is my impression and the last thing I remember is my daughter walking over to me on my left side because we were about to leave there together."
Seven eyewitnesses testified to the events which took place at the time of the alleged fall. One of these, who was twenty-five to thirty feet away from claimant, did state that he saw the claimant's right rear hip in the area of a man's right rear trouser pocket come in contact with the front of the left arm of a chair which was upholstered. The other six witnesses, however, testified either that they did not see claimant come in contact with the chair or any object or that he did not do so. All agreed that the claimant suddenly had severe muscle spasms, "blacked out" and started to fall, and was caught by those close to him before he struck the floor.
Claimant was taken to the hospital and remained unconscious for several days. He was treated there for about ten days and has ever since been wholly disabled. About a month later x-rays were taken which revealed a fracture to claimant's hip which, according to the experts, could have occurred within about thirty to sixty days last past. All the doctors agreed that it would take a severe trauma and extreme force to have caused the fracture. One doctor stated in his opinion that a blow to have caused the fracture must have come from "the direct outer portion of the hip area in the thigh rather than the posterior hip area such as you described as the hip pocket area." Two of the doctors stated that the muscle spasms which took place at the time of the stroke could have caused the fracture.
The evidence before the Deputy Commissioner was not only sufficient to support a finding that there was no fall occurring or that, if there were one, the fall did not cause the injuries for which compensation is sought. Moreover, the evidence overwhelmingly supported that conclusion. In this connection the findings of fact of the Deputy Commissioner are loosely drawn, but if they are deemed not adequate to support the award, the cause should be remanded with instructions to the Deputy to make adequate findings of fact from the evidence. Ball v. Mann, Fla. 1954, 75 So.2d 758. In no event should this Court grope through the record to make findings of fact thereby doing the task which by statute and our decisions is solely that of the Deputy Commissioner. This Court is an appellate court, not a trier of the facts. Laney v. Holbrook, 150 Fla. 622, 8 So.2d 465, 146 A.L.R. 202, especially in certiorari proceedings. See Wilson v. McCoy Mfg. Co., Fla. 1954, 69 So.2d 659, 665.
The instant case, on its facts, is squarely within the holding of Four Branches, Inc., v. Oechsner, Fla. 1954, 73 So.2d 222. In that case the claimant sought compensation for injuries alleged to have been sustained when the elevator she was operating fell into a pit and landed on its buffer springs. The Deputy Commissioner found that the elevator at the time in question slid fifteen inches below the ground level and came to rest on the buffer springs, without bouncing and without noticeable injury to any one. He found further that there was no accident and, if there were, the injuries complained of did not result therefrom. His denial of the award was affirmed by the full Commission but reversed by the Circuit Court. In reversing the holding of the circuit court and thus affirming the order of the Deputy Commissioner, we observed that there was evidence sufficient to support the findings of facts and that neither the full Commission nor this Court is "authorized to overthrow that finding thereby merely substituting its view of the evidence for that of the officer charged under the law with the finding duty."
The claimant urges that this case is within the rule providing that when a serious injury is conclusively shown and a logical cause for it is proven the burden is on the carrier or employer to overcome this proof by showing that another cause of the injury was more logical and consonant with reason. He relies upon such cases as Lyng v. Rao, Fla. 1954, 72 So.2d 53; American Airmotive Corp. v. Moore, Fla. 1952, 62 So.2d 37; Sanford v. A.P. Clark Motors, Inc., *150 Fla. 1950, 45 So.2d 185. What is overlooked by the claimant is that in these cases the evidence pertaining to the accident and the injuries for which compensation was sought was undisputed. It remained only to determine whether the accepted facts were sufficient in law to justify an award of compensation,  in other words, to determine the legal effect of the conceded facts. For example, in Lyng v. Rao [72 So.2d 54], the claimant while in perfect health was sitting at a typewriter in a room where there was water on the floor. Her feet were wet. There suddenly occurred a tremendous flash of lightning. She became immediately ill and was hospitalized. The evidence in all respects was undisputed. The Deputy Commissioner found that there was "no testimony whatever of traumatic injury," but this Court held that he "fell into error because the effect of his construction of the word `trauma' limited it to an outwardly visible bodily injury". We held that the undisputed facts were sufficient to establish a claim because "the only logical explanation of the cause of the injury was that the claimant was struck by lightning." And we said, "Under such circumstances, the burden was on the carrier or employer to overcome this proof by showing that another cause of the injury was more logical and consonant with reason." Thus in that case we held the deputy erred in applying the law to the facts. The other two cited cases are to the same effect.
In the case of Lyng v. Rao, supra, and the others last cited, there was no dispute about the material facts with reference to whether the accident for which compensation was sought did occur. In the instant case, however, at the very least, there is decided conflict in the evidence  first, as to whether or not there did occur the very accident for which recovery was sought and second, if any accident did occur as to whether the alleged injuries could have resulted therefrom. These conflicts in the evidence presented disputes in material questions of fact which were to be resolved by the Deputy Commissioner and by no other person. He did resolve them. He found no accident causing the injuries complained of. Therefore, the rule urged by claimant has no application. Instead, this case is clearly within the rule that where there is evidence both ways about whether the alleged accident did occur or whether the injuries claimed resulted from an asserted accident, the findings of the Deputy Commissioner are conclusive. Smith v. Packer Display, Inc., Fla. 1953, 67 So.2d 323; City Ice & Fuel Division v. Smith, Fla. 1952, 56 So.2d 329; Four Branches, Inc., v. Oechsner, supra. In each of these cases the evidence was in conflict either as to whether an accident had occurred or whether a claimed injury resulted from an asserted accident. And, in each case we affirmed the denial of compensation, observing that, while the evidence was in conflict, there was ample evidence to support the Deputy Commissioner's findings of no accident or no injury.
What is presented here is simply a finding by the Deputy Commissioner that there was no accident and, if there were, that the injury which occurred could not have resulted from the accident. There is evidence to support this finding which in turn supports the denial of award. These circumstances appearing, the task of this Court as a reviewing authority is completed.
There is another plain and indisputable reason why this claimant is not entitled to compensation on the record presented here. Compensation coverage is confined to an injury "arising out of and in the course of employment." Section 440.09(1), F.S. 1951, F.S.A. Both circumstances must appear before an award is permissible. Yet in the instant case all of the evidence, even when viewed in the light most favorable to claimant, falls far short of satisfying either one of these statutory requirements.
In substance claimant seeks compensation for a fall occurring, while he was in the lobby of the Casa Blanca Hotel, as a result of a cerebral vascular accident, in other words  a stroke, brought about *151 solely through his own personal state of health. There is not one word of evidence in the record to show that this stroke was caused by circumstances other than those personal to the claimant; and the claimant in this action does not seek compensation for the effects of the stroke but only for the effects of the fall. Concededly, any fall against the chair which may have occurred was the sole result of claimant's personal physical condition.
It is well settled that injuries which arise out of risks or conditions personal to the claimant do not arise out of the employment unless the employment contributes to the risk or aggravates the injury. Cleary Bros. Constr. Co. v. Nobles, 1945, 156 Fla. 408, 23 So.2d 525; Williamson v. Roy L. Willard, Inc., Fla. 1952, 59 So.2d 865; Martin v. Board of County Commissioners, Fla. 1955, 79 So.2d 513, opinion filed April 13, 1955. See 1 Larson, Workmen's Compensation (1952) 158, Section 12.00. Courts agree that there is a basis for recovery for injuries resulting from a fall caused by personal physical conditions where the injuries from the fall can be attributed to some increased hazard attendant to the job such as where the fall is onto dangerous objects; examples are falls onto such things as a sawhorse, National Automobile & Casualty Insurance Co. v. Industrial Accident Commission, 75 Cal. App.2d 677, 171 P.2d 594; an iron motor box, Varao's Case, 316 Mass. 363, 55 N.E.2d 451; a hot stove, Reynolds v. Passaic Valley Sewerage Commr's, 130 N.J.L. 437, 33 A.2d 595, affirmed 131 N.J.L. 327, 36 A.2d 429; a spot welding machine, Industrial Commission of Ohio v. Nelson, 127 Ohio St. 41, 186 N.E. 735; a sharp corner of a wooden table, United States Casualty Co. v. Richardson, 75 Ga. App. 496, 43 S.E.2d 793; a fire built by a night watchman, Ervin v. Industrial Comm., 364 Ill. 56, 4 N.E.2d 22.
An increased hazard also may be found where there is an idiopathic fall from heights, Gonier v. Chase Companies, 97 Conn. 46, 115 A. 677, 19 A.L.R. 83; noting authority to the contrary, but allowing recovery where a painter fell eleven feet. But where the idiopathic fall occurring on the job is merely onto a level floor, compensation for effects of the fall is extremely difficult to justify and the relevant decisions are in decided conflict. In this highly controversial area, this court has favored the more liberal view allowing recovery. Protectu Awning Shutter Co. v. Cline, 1944, 154 Fla. 30, 16 So.2d 342. Accord Employers Mut. Life Ins. Co. of Wisconsin v. Industrial Acc. Comm'n, 41 Cal.2d 676, 263 P.2d 4 (4-3 decision); Savage v. St. Aeden's Church, 122 Conn. 343, 189 A. 599 (3-2 decision); Barlau v. Minneapolis-Moline Power Implement Co., 214 Minn. 564, 9 N.W.2d 6. Contra Bibb Mfg. Co. v. Alford, 51 Ga. App. 237, 179 S.E. 912; Sears, Roebuck & Co. v. Industrial Commission, 69 Ariz. 320, 213 P.2d 672; Riley v. Oxford Paper Co., Me., 103 A.2d 111; Henderson v. Celanese Corp., 16 N.J. 208, 108 A.2d 267 (4-3 decision); Andrews v. L. & S. Amusement Corp., 253 N.Y. 97, 170 N.E. 506; Stanfield v. Industrial Commission, 146 Ohio St. 583, 67 N.E.2d 446 (6-2 decision); Remington v. Louttit Laundry Co., 77 R.I. 185, 74 A.2d 442. In the Cline case we upheld recovery for effects of a fall caused by the heart attack of the claimant who as a result fractured his skull on the concrete floor. This decision is justified on the basis that the hardness of the floor was an increased hazard attributable to the employment, but that case represents the outer limits of the doctrine. To extend the rule further would be to eradicate completely the statutory requirement that the injury must be one arising out of the employment. The employment in some manner must contribute an increased hazard peculiar to the employment.
The evidence in the instant case wholly fails to meet any of these tests to show that the claimant's employment in any way served to increase the hazard of his alleged fall. An upholstered chair is not a dangerous object. And the presence of such a chair in the hotel lobby was not in any view of the circumstances a special hazard peculiar to the claimant's employment. *152 Nor in an idiopathic fall against the stuffed arm of such a chair in the hotel lobby can there be found exposure to a hazard peculiar to the employment and beyond what is ordinarily experienced by the public as a whole. We can conclude only that any effects from such a fall, even under the claimant's version of the event, could not be held to arise out of his employment.
Finally, the claimant was not in the course of his employment at the time of the alleged fall. At that time, claimant, by his own words had started to leave the lobby of the public hotel with the intention "to go to Lincoln Road to get something for his grandchildren." Therefore his activity at the time of the stroke concerned only a purely personal errand in no way connected with or beneficial to his employment. These circumstances brought him wholly within the rule that an accident is not compensable when it occurs "at a time when the employee was engaged in the pursuit of his own private and personal affairs." Duval Engineering & Contracting Co. v. Johnson, 154 Fla. 9, 13, 16 So.2d 290, 292; Accord Industrial Commission v. Ahern, 119 Ohio St. 41, 162 N.E. 272, 59 A.L.R. 367.
The general principles applicable here were recently stated in Martin v. Board of County Commissioner, supra, where, in affirming a Deputy Commissioner's denial of compensation, we pointed out that the "substantial evidence" rule also applies to medical testimony given in workmen's compensation cases and we reaffirmed that the claimant has the burden to establish causal connection between his injury and his employment and must show that "his injury occurred within the course of his employment and was directly attributable to some event or circumstance connected with his work."
In summary, we conclude that the order of the full Commission must be affirmed because, although there were conflicts in the evidence, there was competent, substantial evidence to support the findings of the Deputy Commissioner whose order based on those findings denying the award was correct under the law. Further, claimant's own version of the event shows conclusively that the effects of any fall were not from an injury arising out of the employment because the fall was caused by conditions purely personal to him and because any effects were not aggravated by any hazard peculiar to his employment; also the fall was not in the course of his employment because at the time claimant was engaged in an activity purely private in nature and in no way connected with his work.
The order of the full Commission was correct and certiorari is denied.
TERRELL, THOMAS and SEBRING, JJ., concur.
HOBSON and ROBERTS, JJ., dissent.

On Petition for Rehearing.
PER CURIAM.
Counsel for petitioner having filed in this cause Petition for Rehearing and having been considered, it is ordered by the Court that said Petition be and the same is hereby denied.
DREW, C.J., and THOMAS, THORNAL and SEBRING, JJ., concur.
TERRELL, HOBSON and ROBERTS, JJ., dissent.
HOBSON, Justice (dissenting).
Petitioner, J.W. Foxworth, brings this proceeding for a writ of certiorari to the Florida Industrial Commission, which affirmed an order of the Deputy Commissioner denying compensation to Foxworth. The order of the Deputy, insofar as the same is pertinent to the consideration involved here, read as follows:
"2. That on November 18, 1952, the claimant, J.W. Foxworth, was an employee of the Florida Industrial Commission, and was on that date in Miami, Florida, in his official capacity as Inspector.

*153 "3. That on said date he sustained a cerebral vascular accident the exact cause of which is unknown.
"4. That it is the consensus of all medical opinion offered that the hip and back injury complained of by the claimant could only happen as the result of severe trauma.
"5. That the testimony of all eyewitnesses was to the effect that claimant did not strike the floor at all, or come in contact with any other object with sufficient force to have resulted in the back injuries and the acetabular fracture of the right hip discovered in x-rays made within a few weeks after he became disabled."
On appeal to the Full Commission this order was affirmed, in the following language:
"The claimant has attempted to show that the injuries suffered by him were the result of a fall which occurred in the course of his employment on the date of November 18, 1952. Undoubtedly the claimant suffered the injuries to his hip between the morning of November 18, 1952 and December 15, 1952, when x-rays were taken which established that the claimant had a hip injury. The injury to the back of the claimant was not discovered by x-ray until the month of March, 1953. Of the seven eye witnesses who testified concerning the occurrence of November 18, 1952, only one witness would testify that he saw the claimant strike anything when the claimant suffered his `blackout'. The value of the testimony of this witness was partially discounted by medical testimony which indicated that for the noted injury to result, the trauma would have to be in a different area of the body than the area to which the trauma allegedly occurred according to this witness. The other witnesses either testified positively that the claimant did not strike any object or testified that they could not say whether or not the claimant did strike any object. It is the opinion of the Commission that the claimant failed to prove to the satisfaction of the Commission that the injuries complained of resulted from an accident arising out of and in the course of his employment."
From the language I have italicized above it is plain that the Commission was of the view that the claimant's injury was traceable to an accident intervening between the accident which occurred on the morning of November 18, 1952, and the time at which x-rays were taken, namely, December 15, 1952. It is equally clear that the Deputy was so convinced.
As I interpret the record it conclusively establishes that claimant suffered a fractured hip at the time he blacked out on November 18, 1952. Uncontroverted evidence in the record shows that the type of fractured hip that claimant suffered is immediately painful and totally disabling, that claimant suffered immediate severe pain in his hip after regaining consciousness approximately an hour after he blacked out, and that claimant became immediately totally disabled and immobile following his blackout. All the doctors who testified agreed that the x-ray taken December 15, 1952 disclosed a serious hip fracture that was at least two to three weeks old at that time.
The testimony of the seven eye witnesses conflicted in material respects concerning a factual situation that took place in extreme confusion and five to eight months prior to the hearing. The witnesses thought claimant was dying of a heart attack and were almost falling over each other in trying to get him to a sofa and then to the hospital. It is my opinion that the Full Commission and the Deputy laid too great emphasis upon the fact that the majority of the seven eye witnesses did not see claimant fall to the floor or against any object which would have caused claimant's hip and back fractures at the time the claimant "blacked out" in the hotel lobby on November 18, 1952, and that they, as well as the majority of this court, gave too little weight to, or completely ignored, the documentary evidence in the form of notes made *154 every few hours by the nurses at St. Francis Hospital where claimant was immediately taken following his accident on the morning of November 18, 1952. The first entry on these notes, contained in Claimant's Exhibit 7, shows claimant "complaining of pain in right leg." Throughout the four days claimant was in the hospital, November 18th to 21st, entries in the nurses' notes periodically show "complains of pain in back and right leg", "painful spasm of right leg occurred", "much difficulty due to spasm in right leg", "complaining of pain in left posterior chest and painful spasms of right leg at intervals", etc. The hospital records further show that during his four days in the hospital claimant was given large amounts of Demerol, a drug given exclusively for the relief of severe pain.
This documentary evidence should have been considered in connection with the expert testimony to the effect that the type of injury [fractured hip] that claimant suffered is immediately painful and totally disabling. When so considered it, to my mind, completely refutes the conjecture that claimant was injured at some time or place other than when he fell in the hotel lobby.
A serious traumatic injury was conclusively proven to have occurred at the time claimant blacked out and fell. The record is devoid of any suggestion by the employer/carrier as to the cause of injury. Neither the Commission nor this Court should delve into the realm of speculation on behalf of the employer/carrier. In my opinion we must presume, under these circumstances, that the injury arose out of and in the course of claimant's employment in the absence of any evidence to the contrary. This is in accord with the well established rule that all doubts should be resolved in favor of the claimant and that our Workmen's Compensation Act should be liberally construed in favor of the employee.
I agree with the majority opinion that the findings of fact of the Deputy are loosely drawn. In fact it is impossible to tell from the Deputy's order the precise reason for his denial of compensation. We can only presume from the wording of the order that he felt that claimant had failed to prove that he was injured at the time of his blackout and fall. The Deputy made no finding, and we should not on this record find, that claimant had departed from his employment at the time of the fall or that his injuries resulted from a cause, to wit: a stroke, which was entirely unrelated to his employment. Claimant sought to show that the blackout or stroke was precipitated by his employment but was precluded from doing so by the Deputy. We should reverse this cause outright or at least reverse the order of the Full Commission on these points and remand the cause for taking additional testimony and making specific findings of fact on these questions after a full and complete hearing on such issues.
I do not agree with the majority that claimant left the course of his employment by arising from the place where he was seated and taking two steps toward his daughter with the intention of joining her in a shopping trip to Lincoln Road to purchase gifts for his grandchildren. When claimant fell it was his immediate superior who was first to reach him and who caught him as he fell. Certainly he was still subject to the orders of his superior and had not left his place of employment. Even if claimant had commenced a temporary break acquiesced in and permitted by his supervisor, his recovery would not be barred. Heller Bros. Packing Co. v. Lewis, 155 Fla. 430, 20 So.2d 385; and Naranja Rock Co. v. Dawal Farms, Fla., 74 So.2d 282.
I have examined the voluminous record at length, and find no suggestion therein contained of any accident other than that which occurred on the morning of November 18, 1952, at which time the claimant fell in the lobby of the Casa Blanca Hotel. Although all witnesses agree that he did not strike the floor when he fell, there was testimony that in falling he struck the arm of a chair. His injuries were abundantly proved. Even with due regard to the medical testimony that a severe blow was required to cause these injuries, we should *155 not presume, and neither the Deputy nor the Full Commission should have presumed, that the injuries were caused by an intervening accident of which there is not a scintilla of evidence and in the face of the documentary evidence [nurses' notes  hospital records] heretofore outlined and discussed. On the whole record it was logical to find only that the accident which was proved caused the injuries, although it may have been thought to be minor when it occurred. It is a matter of common knowledge that accidents which are apparently minor may result in serious injuries.
I would quash the challenged order.
ROBERTS, J., concurs.